Anna Neuman v. Commissioner.
Neuman v. Commissioner
Docket No. 22907.
United States Tax Court
1950 Tax Ct. Memo LEXIS 85; 9 T.C.M. (CCH) 877; T.C.M. (RIA) 50240; October 3, 1950
*85 Martin M. Lore, Esq., 107 William St., New York 7, N. Y., for the petitioner. Graham Loving, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined a deficiency in petitioner's income tax liability for 1945 in the amount of $4,183.58. Part of this deficiency is not contested by petitioner. The issues in this proceeding are (1) whether petitioner is taxable on one-quarter or on one-half of the net income of a partnership known as Kaufman & Neuman; (2) what was the amount of petitioner's distributive share of the income of Kaufman & Neuman during the period from February 28, 1945, to April 30, 1945; (3) whether amounts paid by petitioner to an attorney and an accountant in connection with the dissolution of Kaufman & Neuman are deductible only as a reduction of the proceeds which petitioner realized upon the sale of her partnership interest; and (4) whether the amount charged to bad debt expense by the partnership during its fiscal year ended February 28, 1945, was proper. The petitioner filed her returns for 1945 with the collector for the third district of New York. The record in this proceeding *86 consists of oral testimony and various exhibits. Findings of Fact Petitioner has been engaged in the clothing manufacturing business in New York since 1933. Late in 1943 petitioner entered into discussions with Murray Kaufman relative to the formation of a partnership for the manufacture of boys' clothing. At this time, petitioner was a one-fourth partner in the Independent Boys Clothing Company, which manufactured boys' clothing on a contractual basis for other manufacturers. She devoted her full time to the Independent Boys Clothing Company, and she wanted merely to invest capital in the contemplated partnership and not perform any services for it. After several conferences with Kaufman, the parties agreed to form a partnership which would also include Kaufman's wife, Ruth, and petitioner's twenty-year old daughter, Doris, as equal partners. Prior to the actual formation of the partnership, the parties orally agreed that upon his marriage to Doris and his eventual discharge from the Navy, Doris' finance, Martin Lore, would assume Doris' interest in the partnership and become an active partner. On February 1, 1944, a partnership agreement was entered into between petitioner, *87 Doris, Murray Kaufman, and Ruth Kaufman. Martin Lore was not made a partner at this time because he had not yet married petitioner's daughter, and he was still on active duty with the Navy in Washington. Petitioner, Murray Kaufman, Ruth Kaufman, and Doris each contributed $10,000 as capital to the partnership. Doris borrowed the $10,000 which she contributed to the partnership from petitioner. In exchange therefor, Doris executed five noninterestbearing notes, each in the amount of $2,000 payable to petitioner at six-month intervals beginning April 1, 1945. The partnership agreement provided that the partners should share equally in the profits and losses. Murray Kaufman was to be the only active partner, and he agreed to devote his full time to the partnership. The parties agreed that he would receive a salary of $150 per week for his services. The parties also agreed that petitioner would receive $50 per week from the partnership. She retained the right to become an active partner if she decided to devote her full time to the partnership. Because Doris was not yet twenty-one, petitioner agreed to indemnify the other partners for any loss which they might suffer by reason of Doris' *88 disaffirmance of the contract before reaching the age of twenty-one. The parties also agreed to maintain a checking account with a balance not to exceed $2,000, and agreed that only petitioner and Murray Kaufman could draw checks on this account. However, each of the partners had the right to draw checks on any other checking account maintained by the partnership if the check was also signed by one of the other partners. On February 14, 1944, a certificate of partnership and a trade name certificate were filed by the four partners with the county clerk of New York County. On March 19, 1944, Doris and Martin Lore were married and took up their residence in Washington, Shortly thereafter, Murray Kaufman was requested to amend the partnership agreement in order to transfer Doris' interest to her husband. He refused to consent to the change immediately, and no action had been taken by the parties prior to February 28, 1945, the end of Kaufman & Neuman's fiscal year. Doris performed no services for the partnership. For the fiscal year ended February 28, 1945, Doris' share of Kaufman & Neuman's profits was $4,653.93. She withdrew $1,693.75 from the partnership during the year. She *89 had complete dominion and control over this money, and it was used for her own personal needs and those of her husband. On April 17, 1945, Doris repaid $2,000 of the $10,000 which she had borrowed from petitioner. After equivocating over a period of months, Murray Kaufman decided in April, 1945, that he did not want Martin Lore to become an active partner in Kaufman & Neuman. Petitioner did not desire to continue the partnership under such circumstances, and the partners agreed to dissolve Kaufman & Neuman as of April 30, 1945. Before selling her interest in the partnership, petitioner desired to have an accountant of her own choosing take a physical inventory of the marerials and finished merchandise owned by Kaufman & Neuman. She also wanted to secure advice as to the contemplated dissolution. Accordingly, she hired an accountant and an attorney who performed these services for her. During 1945, she paid a total of $1,575 to the attorney and the accountant for the services rendered by them and for the advice which she received relative to the dissolution of the partnership and the sale of her interest to Murray Kaufman and his wife. Petitioner's distributive share of the net *90 earnings of Kaufman & Neuman from March 1, 1945, to April 30, 1945, was $488.98. She also received $450 as salary during this period. Doris' distributive share of Kaufman & Neuman's earnings during this period was also $488.98. On April 30, 1945, after the crediting of the net profits earned up to that date to the partners' capital accounts, petitioner's capital account had a credit balance of $14,274.15 and Doris' capital account had a credit balance of $13,199.16. On May 7, 1945, petitioner and Doris entered into an agreement whereby, in exchange for a total consideration of $29,320, they sold their respective interests in Kaufman & Neuman to Murray Kaufman and his wife. Petitioner was to be paid $15,197.49 for her interest in Kaufman & Neuman, and Doris was to be paid $14,122.51 for her interest in the partnership. Payment was made by the Kaufmans in the form of a check for $29,320 payable to petitioner. Petitioner, in turn, gave her check for $6,122 to Doris, in settlement of the amount due Doris after deduction of the balance of $8,000 which she owed to petitioner. [1]
*91 Doris deposited the $6,122 which she received in her own bank account. This money was used by Doris for her own personal needs and for those of her husband. No part of the $6,122 ever inured to petitioner's benefit. The parties, in good faith and acting with a business purpose, intended to join together with Doris as partners in the operation of the partnership known as Kaufman & Neuman during 1944 and 1945. On February 28, 1945, at the end of its first year of operations, Kaufman & Neuman had accounts receivable outstanding which totaled $45,196.82. Its net charge sales for the year totaled $337,109.49. The partnership did not sustain any losses from bad debts during 1944 or 1945. After consultations with the accountant employed to audit the books of Kaufman & Neuman, the partners decided at the end of the partnership's first fiscal year that one-fourth of one per cent of the net charge sales of the partnership should be set up in a reserve for doubtful accounts. Accordingly, $842.77 was set up in such a reserve and charged to bad debt expense. This was a reasonable amount to set aside as a reserve for doubtful accounts. Opinion The principal issue in this proceeding is *92 whether or not petitioner's daughter, Doris, should be recognized as a partner in the partnership doing business as Kaufman & Neuman. Although the respondent does not dispute the existence of Kaufman & Neuman as a partnership, he has refused to recognize Doris as a partner and has determined that her interest in thepartnership's profits should be included in petitioner's gross income. The correctness of this determination depends upon whether or not the parties in good faith and acting with a business purpose intended to join together with Doris as partners in the present conduct of ; . Upon consideration of all the facts and circumstances which show the intent of the parties, we have found as a fact that the parties intended that petitioner's daughter, Doris, be a bona fide partner in Kaufman & Neuman. Kaufman & Neuman was a newly organized partnership which required a substantial amount of capital with which to begin its business. One-fourth of the necessary capital was contributed to the partnership by Doris. Although the $10,000 which comprised Doris' capital *93 contribution was borrowed by her from petitioner, petitioner did not receive, nor did she have the right to receive, any part of the profits from Doris' interest in the partnership. Doris executed five notes for $2,000 each, payable to petitioner at six-month intervals, in exchange for the money which she borrowed. The first of these notes was paid by Doris when it fell due, and the other four notes were paid by Doris before their due date, upon the dissolution of the partnership. The right to receive and enjoy the benefit of the income from Doris' interest in the partnership was not created by petitioner. This issue does not involve a mere paper reallocation of income within the family unit. Doris was engaged to be married at the time Kaufman & Neuman was organized, and approximately one month after the organization of the partnership she did get married. After he marriage she maintained a household in conjunction with her husband which was completely independent of petitioner. Doris had complete dominion and control over the amounts which she received from the partnership, and the profits which she withdrew from Kaufman & Neuman were used for her own personal needs and those of *94 her husband. It is held that only one-quarter of the net income of Kaufman & Neuman is includible in petitioner's gross income. The second issue is the correct amount of petitioner's distributive share of the earnings of Kaufman & Neuman from March 1, 1945, to April 30, 1945. The evidence clearly shows that the net earnings of the partnership during the period, after the deduction of the salaries paid to petitioner and to Murray Kaufman, was $1,955.92. Petitioner's one-quarter share of these earnings was $488.98. After this amount was credited to petitioner's capital account, her account had a credit balance of $14,274.15. The difference between the balance in her account and the $15,197.49 which petitioner received in payment for her interest in the partnership, or $923.34, was a long-term capital gain. ; aff'd, ; certiorari denied, ; . It was not part of her distributive share of the partnership's earnings. In an amended answer, respondent contends under the third issue that fees totaling $1,575 paid by petitioner to an *95 accountant and to an attorney were expenses incurred in the sale of petitioner's partnership interest, and that these expenditures are deductible only as a reduction of the capital gain realized by petitioner upon the sale of her interest in the partnership. Petitioner denies that the payments to the attorney and to the accountant were expenses incurred in the sale of her interest in the partnership and seemingly makes the argument that the fees paid were expended in the dissolution of the partnership. This argument can only be characterized as a distinction without a difference; the partnership was dissolved by the sale of the partnership interest, and the fees were paid, as petitioner admitted at the trial, for advice which she received as to whether or not she should sell her interest in the partnership and for a physical inventory of the business which petitioner desired to have made by an accountant of her own choosing before she sold her interest. Such expenditures were expenses of the sale by petitioner of her interest in the partnership. It is held that the expenses incurred by petitioner in the sale of her interest in the partnership, which was a capital asset, are deductible *96 only insofar as they reduce the proceeds received by petitioner from the sale. ; ; cf. . The final issue in this proceeding is whether the amount of $842.47 was a proper amount to be charged to bad debt expense by Kaufman & Neuman for the fiscal year ended February 28, 1945. Kaufman & Neuman used the reserve method to charge off uncollectible and worthless accounts receivable. It credited one-quarter of one per cent of its net sales on account to its reserve for doubtful accounts and deducted that amount from gross income as estimated bad debt expense. Respondent has determined that the amount deducted was improper and seeks to increase petitioner's share of Kaufman & Neuman's income by her distributive share of the amount deducted. From an examination of all the surrounding conditions existing at the time the addition to the reserve for bad debt losses was made, we have found as a fact that the amount credited by Kaufman & Neuman to the reserve was reasonable and proper. Respondent's determination that the amount was improper was largely *97 premised on subsequent events, primarily the fact that actual losses were less than anticipated. However, a bad debt reserve is merely an estimate of probable future losses, and the estimate for any year must be measured by the necessities as they appear at the time the estimate is made. ; ; aff'd, . Kaufman & Neuman was a new business which had no past experience of its own on which to rely in setting up its reserve for bad debt losses. The facts and circumstances of the business justified the deduction as estimated bad debt expense of one-quarter of one per cent of Kaufman & Neuman's net sales on account, and it is held that the amount so deducted was proper. Decision will be entered under Rule 50. Footnotes
1. There is an unexplained discrepancy of 51 cents in the amount due Doris from petitioner and the amount actually paid by petitioner.↩